UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHELBY J. TICKLE,
        *Plaintiff-Appellant,*

v.

LONG TERM DISABILITY PLAN OF
MARATHON ASHLAND PETROLEUM,
LLC, a corporation,
        *Defendant-Appellee.*

No. 01-2100

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CA-00-955-3)

Argued: April 5, 2002

Decided: May 10, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Richard Thompson, Lavalette, West Virginia, for Appellant. John Harlan Mahaney, II, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellee. **ON BRIEF:** R. Kemp Morton, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Shelby Tickle filed suit in federal district court against the Long Term Disability Plan of Marathon Ashland Petroleum, LLC ("the Plan"), after the Plan Administrator denied Tickle's application for benefits. *See* 29 U.S.C.A. § 1001 *et seq.* (West 1999 & Supp. 2001) ("ERISA"). The court granted the Plan's motion for summary judgment, finding that the Administrator did not abuse his discretion in denying Tickle's claim. Tickle appeals, and we affirm.

### I.

Shelby Tickle was employed as a buyer for a subsidiary company of Marathon Ashland Petroleum ("MAP"). Upon beginning employment with the company in 1979, Tickle elected to participate in a group long-term disability plan offered by the company. The Plan was sponsored and insured by MAP, but was fully funded by participating employees by way of payroll deductions. If the benefits ultimately paid to employees under the Plan exceeded contributions, MAP, as sponsor and insurer of the Plan, was responsible for making up the difference. The Plan Administrator — the person with the ultimate authority to decide whether to grant benefits under the Plan — was Rodney Nichols, an employee of MAP.

The Plan operates as follows. When a claim is made, the application for benefits and the supporting materials are sent to Connecticut General Life Insurance Company ("CIGNA"), which notifies the applicant of the decision on the application. If an applicant is dissatisfied with the result, he or she may appeal to the Plan Administrator, at which time additional materials may be submitted in support of the claim. CIGNA then reviews the file again and makes a recommendation to the Administrator, who is free to decide the claim as he sees fit. It is undisputed that under the Plan's terms the Administrator has

broad discretion to interpret the Plan and make benefits eligibility determinations.

In October 1997, Tickle was involved in a car accident, but was able to return to work part-time afterward. The accident aggravated a pre-existing back condition, however, and in November 1998, Dr. Panos Ignatiadis performed surgery on Tickle's back. After undergoing surgery, Tickle claimed that, largely as a result of back pain and some psychiatric problems that she developed as a result of the pain, she was unable to return to work.

In March 1999, Tickle submitted to a functional capacity evaluation ("FCE"), and the results indicated that Tickle could perform sedentary work. Those results notwithstanding, Dr. Ignatiadis opined shortly after the FCE that Tickle was "to be disabled for at least a year." J.A. 178. In May 1999, Tickle submitted to the Plan a claim for disability benefits. In order to receive benefits for the period in question, Tickle was required to demonstrate that she was disabled from performing her own occupation, not that she was disabled from any occupation. Three medical personnel submitted forms in support of Tickle's claim, indicating that in their opinions Tickle was unable to perform her previous position as a buyer. These three persons were Dr. Ignatiadis, Tickle's attending physician, Dr. Debra Stultz, Tickle's treating psychiatrist, and Hugh Murray, Tickle's physical therapist. None indicated whether objective testing had been performed that would support their conclusions.

Having reviewed Tickle's claim and the materials offered in support, CIGNA recommended that the claim be denied "as the medical information does not support her inability to perform her" own occupation. J.A. 113. In response to CIGNA's recommendation, the Plan retained Dr. Joel Steinberg to conduct an independent review of the claim. He concluded that medical evidence did not support Tickle's claim that she was not able to perform her duties as a buyer for MAP. Reviewing what little objective evidence was presented in support of Tickle's claim, Dr. Steinberg noted that even though the FCE indicated that Tickle failed to make consistent efforts during the examination, the results nevertheless showed that Tickle was capable of performing sedentary work, which would include the buyer position.

Similarly, with regard to Tickle's psychiatric difficulties, Dr. Steinberg noted that the only test apparent from Dr. Stultz's records was a Global Assessment of Function ("GAF"), which indicated a score of 60. According to the Diagnostic and Statistical Manual, fourth edition, a score of 51-60 indicates moderate symptoms, and a score of 61-70 indicates mild symptoms. A score of 60 thus meant that Tickle was "at the interface between moderate symptoms and mild symptoms. In either case, occupational activity is not precluded." J.A. 96. Based on his review of the materials, Dr. Steinberg concluded that "Ms. Tickle appear[ed] to have the capacity to return to duty," although he noted that she should "*not* work under conditions of *high stress*." J.A. 96.

On August 30, 1999, CIGNA informed Tickle that her claim was denied. Tickle appealed the denial, and in support of her appeal, submitted additional materials from Drs. Ignatiadis and Stultz. The information from Dr. Ignatiadis reiterated his earlier opinion, stating that Tickle was still "apparently . . . totally and permanently disabled" and would not be able to work. J.A. 76. The additional information from Dr. Stultz stated that Tickle was unable to work because of severe depression. None of the additional materials submitted indicated that any further objective testing had been performed, the results of which would support the doctors' conclusions.

Pursuant to the Plan procedure for resolving an appeal, CIGNA again reviewed the claim and recommended that the Administrator deny benefits because Dr. Stultz's report contained "[n]o formal testing results" and appeared to be based "only [on] Ms. Tickle's self-reported complaints." J.A. 67. Furthermore, "Dr. Ignatiadis' report does not address the findings of the FCE or attempt to dispute the[ ] results." J.A. 67. Dr. Ignatiadis provided no objective evidence to support his finding of disability, and like Dr. Stultz, "[h]e also appear[ed] to rely solely on [Tickle's] complaints of back pain" rather than "attempting to support [Tickle's] complaints with documentation to confirm a medical basis for the ongoing pain." J.A. 67. CIGNA concluded that the additional materials did "not assist [CIGNA] in understanding why [Tickle] is unable to work as a Buyer in a sedentary capacity." J.A. 67.

Meanwhile, Tickle had applied for disability benefits from the Social Security Administration ("SSA"). Although those too were ini-

tially denied, Tickle successfully appealed the denial and was awarded benefits. The letter memorializing Tickle's award of social security benefits was sent to the Plan Administrator for consideration. Notwithstanding Tickle's success in convincing the SSA that she was totally disabled, the Administrator accepted CIGNA's recommendation and denied her appeal. That decision produced the proceedings in the district court that are the subject of the current appeal.

## II.

Tickle argues that, because the Plan Administrator is an employee of MAP, and because MAP is ultimately responsible for the amount by which successful claims under the Plan exceed employee contributions, the district court should have utilized a modified abuse of discretion standard to account for the Administrator's supposed conflict of interest in administering the Plan. Under an appropriately modified standard of review, Tickle claims, the Administrator's decision to deny benefits must be overturned.

In the usual ERISA case where an administrator has discretion under the terms of an employee benefits plan to determine eligibility, we review the administrator's decision to deny benefits for an abuse of discretion. *See, e.g.*, *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). When "an administrator . . . is operating under a conflict of interest, [however,] that conflict must be weighed as a factor in determining whether there [was] an abuse of discretion." *Id.* (internal quotation marks and alteration omitted). The conflict of interest thus warrants a modification of the usual abuse of discretion standard, but "only to the extent necessary to counteract any influence unduly resulting from the conflict." *Id.* (internal quotation marks omitted).

In this case we assume without deciding that Tickle is correct that the Administrator was operating under a conflict of interest when he denied her claim for benefits and that the district court therefore should have employed a modified abuse of discretion standard. Even so, with an appropriately modified standard of review in mind, we believe the grant of summary judgment to the Plan was proper. All of the objective medical evidence in this case indicated that Tickle could perform the sedentary work she was performing before back surgery. Tickle does not seriously dispute the fact that the buyer posi-

tion to which she was assigned consists of sedentary work, but rather, seizing on Dr. Steinberg's conclusion that she should not work in a high stress position, she argues that the position of buyer is stressful. We do not doubt that Tickle's previous position involved some level of stress. We are not told, however, why it would qualify as a job with *high* stress, or how the stress level of a buyer is any higher than that of any other position requiring sedentary work.

Instead, Tickle relies primarily on the opinions of Drs. Ignatiadis and Stultz to support her disability claim. Tickle suggests that the opinions of treating medical personnel should be given great weight, and that the Administrator's decision should be reversed in light of those opinions. We have previously expressed reservations about adopting a "treating physician" rule in the context of reviewing an administrator's decision under an employee benefits plan. *See Elliott*, 190 F.3d at 607-08. What we said in *Elliot* is equally applicable to the current case: the "treating physician" rule "only requires an award of benefits based upon a treating doctor's opinion of disability *absent persuasive contradictory evidence*. Here, such contradictory evidence exists." *Id.* (citation omitted). In this case, as we have already noted, there is no evidence that the treating personnel relied on any objective testing in reaching their conclusions. Indeed, the objective evidence that is in the record sufficiently contradicts their opinions to justify a refusal to give those opinions any special weight.

And finally, to the extent that Tickle argues that the SSA's determination should have been a determinative factor for the Administrator, we rejected that same argument in *Elliott*, explaining that "the Plan Administrator was under no obligation to weigh the agency's disability determination more favorably than other evidence." *Id.* at 607. Nothing about this case compels us to revisit our conclusion that, even in the face of a SSA determination of disability, a plan administrator is entitled to make his own independent judgment.

### III.

In sum, we have thoroughly reviewed the record in this case in light of the arguments advanced by counsel. We are convinced that, even under an appropriately modified abuse of discretion standard, summary judgment for the Plan must be affirmed.

*AFFIRMED*